**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**David M. BEAL, Defendant-Appellee.**

No. 86–3056.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 21, 1986.

Decided Feb. 5, 1987.

Rehearing and Rehearing En Banc
Denied April 27, 1987.

Edgar, District Judge, sitting by designation, dissented and filed an opinion.

Steven R. Olah, David O. Bauer, Michael T. Rae, Crim. Div., U.S. Dept. of Justice, Cleveland, Ohio, Louis M. Fischer (argued) Lead Counsel, Crim. Div., Washington, D.C., for plaintiff-appellant.

Gary W. Eisner, Cleveland, Ohio, for defendant-appellee.

Before GUY, Circuit Judge, PECK, Senior Circuit Judge, and EDGAR, U.S. District Judge.*

JOHN W. PECK, Senior Circuit Judge.

The government appeals from the district court's order granting the motion of the accused, David Beal, to suppress two .22 caliber pen guns seized from a dresser that was the subject of a valid search warrant. The pen guns formed the basis for Beal's indictment for possession of unregistered firearms and firearms not identified by serial numbers. The sole issue on appeal is whether the district court erred in determining that the seizure did not fall within the plain view exception to the Fourth Amendment's warrant requirement. For reasons stated herein, we affirm.

## I.

The evidence adduced at the suppression hearing showed that on May 27, 1982, Akron police executed a valid search warrant at the Hells Angels' Motorcycle Club headquarters in Akron, Ohio. In relevant part objects of the search warrant were items of bedroom furniture suspected of being stolen property. The police found a dresser listed in the search warrant in Beal's apartment which was located on the second floor of the establishment. Because the search warrant authorized seizure of the dresser, but not its contents, police officer John Williams began removing personal effects and clothing, one at a time. While doing

---

* Honorable R. Allan Edgar, United States District Judge for the Eastern District of Tennessee, sitting by designation.

so, he came upon two items which appeared to be fountain pens. Williams noted that they were "extremely heavy" and therefore were "suspicious." He showed them to F.B.I. Special Agent Thornton, who was executing a federal search warrant in an adjoining room. Thornton in turn asked Special Agent Baraducci of the Bureau of Alcohol, Tobacco and Firearms to look at the pens. Baraducci, who was not produced to testify at the suppression hearing, allegedly told Williams and Thornton that he thought the pens were actually guns and that their possession would be illegal under federal law. Baraducci never stated why he thought possession of the pen guns would be illegal. The pens were then seized. Later lab analysis confirmed that the "pens" could expel .22 caliber projectiles. Beal was subsequently indicted on one count of possessing firearms not registered in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. § 5861(d), and one count of possessing firearms not identified by serial numbers in violation of 26 U.S.C. § 5861(i).

## II.

◼ The plain view doctrine or exception to the Fourth Amendment's warrant requirement permits officers executing a search warrant to seize objects outside the scope of the warrant provided three criteria are met: the initial intrusion by the officers must be lawful; the discovery of the incriminating evidence must be inadvertent; and the incriminating nature of the evidence must be "immediately apparent." *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). It is undisputed in this case that the executing officers' initial intrusion pursuant to a valid search warrant was lawful and that discovery of the pen guns was inadvertent. The only issue therefore remaining is whether the incriminating nature of the pen guns was "immediately apparent" to the officers so as to justify their seizure under the plain view doctrine.

Since *Coolidge*, both the Supreme Court and this court have considered and further

defined the "immediately apparent" prong of the doctrine. In *Texas v. Brown*, a plurality opinion, the Supreme Court stated that *Coolidge's* "immediately apparent" test does not require "an unduly high degree of certainty as to the incriminatory character of evidence," but rather that the seizure be *"presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity ...* (emphasis added)." 460 U.S. 730, 741–42, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (quoting *Payton v. New York*, 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980)).

This characterization of the "immediately apparent" test in *Brown* was consistent with this court's earlier understanding in *United States v. Gray*, 484 F.2d 352, 356 (6th Cir.1973), *cert. denied*, 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974), and in *United States v. Truitt*, 521 F.2d 1174, 1176–77 (6th Cir.1975), that *Coolidge, supra*, embodies a probable cause standard. This court has since stated that *Brown* "stands for the proposition that evidence in *plain view* may be seized where the executing officers have 'probable cause' to believe that a nexus exists between the viewed item and criminal activity." *United States v. Szymkowiak*, 727 F.2d 95, 97 (6th Cir.1984). Probable cause, as so defined, must be *both* "immediate" and "apparent" to the officer from the object's nature. *Id.* at 98. These requirements avert the danger that officers will enlarge a specific warrant into a general warrant to undertake prolonged rummaging. *Id.; Brown*, 460 U.S. at 748, 103 S.Ct. at 1546 (Stevens, J., concurring).

◼ In determining whether probable cause to connect the seized item with criminality is apparent, this court has emphasized certain factors. We have looked for, without holding it to be a necessary criterion, a nexus between the seized object and the items particularized in the search warrant. *Szymkowiak*, 727 F.2d at 98; *Gray*, 484 F.2d at 355. *See also Jennings v. Rees*, 800 F.2d 72, 75 (6th Cir.1986). We have also examined whether the "intrinsic

nature" or appearance of the seized object gives probable cause to believe that it is associated with criminal activity. *United States v. McLernon*, 746 F.2d 1098, 1125 (6th Cir.1984); *Szymkowiak*, 727 F.2d at 99. The immediacy prong of the test requires that the executing officers can *at the time* of discovery of the object on the facts then available to them determine probable cause of the object's incriminating nature. *Szymkowiak*, 727 F.2d at 95. In other words, to be immediate, probable cause must be "the direct result of the officer's instantaneous sensory perception of the object." *McLernon*, 746 F.2d at 1124.

Despite the government's arguments that *Szymkowiak* is distinguishable from the case on appeal, we conclude that *Szymkowiak* is controlling in this case. Probable cause to connect the "pens" with criminality was not apparent. The agents' initial perceptions "produced only visual images of two 'intrinsically innocent' items." *McLernon*, 746 F.2d at 1125. Although Williams and Thornton were struck by the weight of the "pens," neither connected them with criminal behavior. In fact, Williams admitted at the suppression hearing that the pens could have been paperweights and their heaviness did not indicate that they were contraband. The government, which has the burden of proving the propriety of a warrantless seizure, *see United States v. Matlock*, 415 U.S. 164, 177, 94 S.Ct. 988, 996, 39 L.Ed.2d 242 (1974), did not produce Agent Baraducci at the suppression hearing. Thus, the record contains only the hearsay statements of Williams and Thornton that Baraducci simply said without explanation that the pens were guns and that they were illegal.[1] Further, there was no nexus between the "pens" and the furniture specified in the search warrant which sought evidence of stolen property. Moreover, Thornton knew that Beal was not a felon for whom mere

possession of a weapon would be illegal. *See Jennings*, 800 F.2d at 75. On the state of the record, the district court did not err in concluding that probable cause to associate the pen guns with criminal activity was not apparent.

Similarly, the district court also correctly concluded that the immediacy element was lacking. In addition to the above factors, there was no way, absent disassembly of the pens, that the agents could immediately discern probable cause at the time of the pens' discovery to associate the pens with criminal activity; i.e., that they were unregistered and lacked serial numbers. The evidence, which formed the basis for the indictment was, and could only be, gathered subsequent to the seizure and disassembly. Although the dissent argues that probable cause existed because Baraducci no doubt in his experience immediately knew that the pens were really guns and that their lawful possession was rare, Baraducci's alleged expertise and assessments are mere speculation due to the government's failure to produce Baraducci as a witness.

In the alternative, the government has argued that *Szymkowiak, supra,* is a poorly conceived opinion and one which we should decline to follow. It is well established in this circuit that once a panel has ruled on an issue, it becomes the law of the circuit and may not be overruled by another panel. *Messer v. Curci*, No. 85–5626 (6th Cir. Dec. 2, 1986). If *Szymkowiak* misreads *Brown, supra,* and states too strict a test for probable cause, it is not for this panel to say.

Based on the facts before us, under the teaching of *Szymkowiak* the agents lacked probable cause at the time of the seizure to believe that the "pens" were contraband or otherwise associated with criminal activity. It may be ironic, as the dissent observes, that the pen guns' benign outer appearance

---

1. The Federal Rules of Evidence do not govern hearings before a judge to determine admissibility of evidence and hearsay may be considered by the judge in admissibility hearings. *Matlock,* 415 U.S. at 172–75, 94 S.Ct. at 993–95; Fed.R.

Evid. 104(a). However, we note the hearsay nature of the critical evidence in this proceeding, because it may well have affected the weight the judge gave to the evidence.

concealed their deadly capabilities and helped prevent their possibly criminal nature from being "immediately apparent." Nonetheless, this circuit has vigorously adhered to the requirement that probable cause must be both immediate and apparent.

> [T]his standard is mindful of the Supreme Court's constant warning that any exception to the Fourth Amendment's Warrant Clause be 'carefully delineated.' Where ... probable cause to connect the viewed item with criminal behavior is not *both* 'immediate' and 'apparent,' ... the individual's interests in retaining possession of property and in maintaining privacy ... and society's interest in lawful enforcement activity ... are greatly compromised.

*Szymkowiak,* 727 F.2d at 98.

The order of the district court is AFFIRMED.

EDGAR, District Judge, dissenting.

The question in this case is whether the law enforcement officers properly seized the two .22–caliber pen guns under the "plain view" exception to the fourth amendment's warrant requirement. *See Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Under this Circuit's formulation, evidence may not be seized under the plain view exception unless the executing officers show (1) a prior valid intrusion, (2) an inadvertent discovery, and (3) that the evidence of the unlawful act was "immediately apparent" to them. *United States v. Szymkowiak,* 727 F.2d 95, 96 (6th Cir.1984).

As the majority points out, the parties do not dispute that the first two requirements of the plain view exception are met in this case. The officers had a valid warrant to search and seize the dresser. The warrant authorized seizure of the furniture but not

its contents. The pen guns were observed by Officer Williams when he placed the contents of a dresser drawer on a bed.

The precise issue here is whether the third *Coolidge* requirement is met, *i.e.,* whether it was immediately apparent to the officers that the pen guns were evidence of unlawful activity. Because a plain view seizure is made without a warrant, the "immediately apparent" requirement is merely a formulation of the requirement that the officers have "probable cause" to seize the item. Probable cause exists where the facts and circumstances within the knowledge of the officers and of which they had reasonably trustworthy information are sufficient within themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *United States v. Truitt,* 521 F.2d 1174, 1177 (6th Cir.1975) (citing *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). The inquiry, therefore, is whether the discovery of the object under the circumstances "would warrant a police officer of reasonable caution in believing that an offense has been or is being committed and that the object is evidence incriminating the accused." *Truitt,* 521 F.2d at 1177.

This Court in *Szymkowiak,* citing *United States v. Gray,* 484 F.2d 352 (6th Cir. 1973), *cert. denied,* 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974), and *Truitt* concluded that the seizing officers would have probable cause only if the "intrinsic nature" of the object seized was incriminating. *Szymkowiak,* 727 F.2d at 99. Otherwise the "immediately apparent" requirement would not be met because there would be no nexus between the seized items and the criminal behavior. *Id.* at 98–99; *see also United States v. McLernon,* 746 F.2d 1098, 1125 (6th Cir.1984).[1]

---

1. The majority also seems to indicate that probable cause requires a nexus between the seized object and the items particularized in the search warrant. Even though there is language to the effect in *Szymkowiak,* 727 F.2d at 98, there is also language in that same decision which requires a nexus between the viewed item and

criminal activity. 727 F.2d at 97. In *McLernon,* a decision issued after *Szymkowiak,* Judge Jones, who wrote *Szymkowiak,* discusses only a requirement that the police need have probable cause to believe that the seized item has *criminal significance or evidentiary value.* 746 F.2d at 1125. In summary, I believe that under the

It is clear that the pen guns found by the officers in this case were, by their very nature, intrinsically suspicious. Officer Williams and FBI Agent Thornton thought them suspicious enough to consult BATF Agent Baraducci. When Agent Baraducci, who was on the scene, was shown one of the pen guns, his response was, "I think that is a gun. If it is a gun, it is illegal." [2] Agent Baraducci's [3] state of mind upon viewing the pen guns was the same as that of the officers in *Truitt* when they discovered a sawed off shotgun. In both cases, the officers knew that the lawful possession of the weapon they found "is, in ordinary experience, rare indeed. There is very little legitimate use for such a weapon." *Truitt*, 521 F.2d at 1177. It was simply not necessary for Baraducci to disassemble the pen guns for him to connect them with criminal activity.

One can certainly say that a pen gun is not an "intrinsically innocent" object. *See Porter v. United States*, 335 F.2d 602, 607 (9th Cir.1964), *cert. denied*, 379 U.S. 983, 85 S.Ct. 695, 13 L.Ed.2d 574 (1965), *cited in Truitt*, 521 F.2d at 1177. A pen gun is innocent only in its outward appearance which purposely conceals the fact that it can fire deadly .22-caliber bullets. It is ironic that the majority concludes that this purposeful concealment has successfully prevented the illegal nature of these pen guns from being "immediately apparent."

This case is unlike *Gray*, where officers seized ordinary looking rifles, copied their serial numbers, and later learned that they had been stolen. It is also different from *Szymkowiak*, where officers seized a firearm and called in a BATF agent from another location. Upon arriving thirty minutes after the call, the agent in *Szymkowiak* did not immediately recognize the firearm's illegality, and could not make that determination without later disassembling it. Instead, this case is controlled by *Truitt*. In *Truitt*, the officers, in the execution of a search warrant for gambling paraphernalia, came upon a sawed off shotgun. Recognizing that such a weapon is usually not registered and is rarely put to legitimate use, the officers seized it. Suppression was denied even though the sawed off shotgun was seized in a sporting goods store.

It is my belief that the conclusion that the majority reaches in this case is not necessarily mandated by *Szymkowiak* because the facts in the two cases are distinguishable. However, it is also my view that the *Szymkowiak* decision, with its emphasis on the words "immediate" and "apparent," places a higher standard on law enforcement officials than the fourth amendment requires and is inconsistent with the Supreme Court's decision in *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). In that case a four-judge plurality said that:

> Decisions of this Court since Coolidge indicate that the use of the phrase "immediately apparent" was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of the evidence is necessary for an application of the "plain view" doctrine.

460 U.S. at 741, 103 S.Ct. at 1543.

As the Court frequently has remarked, probable cause is a flexible, common-

---

case law of this circuit the only nexus required for application of the "plain view" exception is a nexus between the seized item and criminal activity or behavior, and not between the seized items and the items listed in the warrant.

**2.** As the majority points out, this statement was hearsay. It was, however, admissible hearsay, and no party has questioned that Agent Baraducci made the statement.

**3.** While the pen guns were actually found by Officer Williams, who showed them to FBI Agent Thornton, who then showed them to BATF Agent Baraducci who was on the scene while the search was in progress, it is appropriate to consider the collective knowledge of all the officers on the scene. The admissibility of this evidence is not limited by the fortuity of which officer first happened upon the pen guns. *United States v. Johnston*, 784 F.2d 416, 420 (1st Cir.1986); *United States v. Newton*, 788 F.2d 1392, 1395 (8th Cir.1986); *United States v. Wright*, 641 F.2d 602, 606 (8th Cir.), *cert. denied*, 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1981).

sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," ... that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required.

460 U.S. at 742, 103 S.Ct. at 1543 (citations omitted).

I would hold that under either the *Szymkowiak* "immediately apparent" standard or the *Brown* "common-sense" standard, the officers here had probable cause to conclude that possession of the pen guns was illegal. The decision of the district court should be REVERSED.