<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>

File Name: 16a0091n.06

Case No. 14-6158

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Feb 10, 2016<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| Plaintiff-Appellee, | ) |  |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
|  | ) | THE EASTERN DISTRICT OF |
| VICTOR J. STITT, II, | ) | TENNESSEE |
|  | ) |  |
| Defendant-Appellant. | ) |  |

BEFORE: MOORE and COOK, Circuit Judges; PEARSON, District Judge.[*]

COOK, Circuit Judge. After Victor Stitt pulled a gun on his girlfriend, a jury convicted him of being a felon in possession of a firearm. He appeals, challenging the denial of his motion to suppress, venue in the Eastern District of Tennessee, and his sentence enhancement under the Armed Career Criminal Act (ACCA). Finding no error, we AFFIRM his conviction and sentence.

**I.**

In 2011, Stitt lived with his girlfriend Rebecca Hostetler in Coffee County in the Eastern District of Tennessee. During an argument, Stitt retrieved a firearm, tried to stick it in Hostetler's mouth, and threatened to kill her. When a neighbor intervened, Hostetler left, and

---

[*] The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

Stitt asked another woman to drive him to his mother's home in Cannon County in the Middle District of Tennessee. The neighbor told the police that Stitt and the other woman left in a champagne-colored car.

Coffee County detectives responded to a dispatch reporting a domestic-violence incident and directing them to Stitt's mother's address. The detectives drove their unmarked car to the end of the driveway and saw the champagne-colored car in the backyard. They also saw Stitt standing at the backdoor of his mother's trailer. He fled, and the detectives chased him around both sides of the trailer. Trapped, Stitt surrendered. A .22 caliber handgun lay within arm's reach of Stitt on the ground.

A grand jury indicted Stitt on one count of being a felon in possession in violation of 18 U.S.C. § 922(g). Stitt moved to suppress evidence of the firearm, claiming that the detectives breached the trailer's constitutionally protected curtilage before spotting him at the backdoor. After a hearing, a report and recommendation, and objections, the district court denied the motion.

A jury then convicted Stitt on the felon-in-possession charge. Because Stitt's pre-sentence report identified nine "violent felony" convictions under ACCA, the court—over Stitt's objection—labeled him an armed career criminal and imposed a within-guidelines sentence of 290 months of imprisonment.

Stitt now appeals.

## II.

Stitt first claims that the district court erred in denying his motion to suppress. He argues that the end of the driveway—where the detectives stopped their car—constituted curtilage.

By entering this constitutionally protected area, the detectives violated Stitt's Fourth Amendment rights, and the court should have suppressed the evidence the detectives subsequently seized.

We review the district court's findings of fact for clear error but give de novo review to its conclusions of law. *United States v. Ray*, 803 F.3d 244, 275 (6th Cir. 2015). "A factual finding is clearly erroneous when 'a court, on reviewing the evidence, is left with the definite and firm conviction that a mistake has been committed.'" *Id*. (quoting *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009)).

Curtilage includes "the area around the home to which the activity of home life extends." *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 598 (6th Cir. 1998) (quoting *Oliver v. United States*, 466 U.S. 170, 182 n.12 (1984)). Four factors govern the classification of an area as curtilage:

> [1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing.

*Id.* (quoting *United States v. Dunn*, 480 U.S. 294, 301 (1987)). Analyzing these factors assists us in determining whether an individual "reasonably may expect that the area in question should be treated as the home itself," *i.e.*, as a place in which the individual reasonably may expect privacy. *Dunn*, 480 U.S. at 300.

The end of the driveway, or turnaround, stood in close proximity to the trailer, suggesting that Stitt reasonably could expect privacy there. *See, e.g.*, *Widgren v. Maple Grove Twp.*, 429 F.3d 575, 582 (6th Cir. 2005) (finding a cleared area four to six feet away from the house was curtilage).

But proximity alone does not suffice, and the other factors weigh against a finding of curtilage. The public could view and access the turnaround from the street, undermining Stitt's expectation of privacy. *See, e.g.*, *United States v. Galaviz*, 645 F.3d 347, 356 (6th Cir. 2011) (finding no expectation of privacy when the defendant took no steps "to protect the driveway from observation by passersby"). And though the property boasted a fence, the driveway lay outside the fence, and no gate blocked the entrance. *Id.* (concluding that the defendant lacked any expectation of privacy when the driveway was not enclosed by a fence or other barrier). Finally, the family's use of the turnaround reinforced its non-private nature. Testimony established that visitors parked cars in the turnaround—decidedly not an activity associated with the privacies of life. *Compare United States v. Estes*, 343 F. App'x 97, 101 (6th Cir. 2009) (finding that the use of a driveway as a "point of entry into the residence" "undercut a finding that the driveway represents curtilage"), *with Pritchard v. Hamilton Twp. Bd. of Trs.*, 424 F. App'x 492, 499 (6th Cir. 2011) (finding that a backyard used for swimming could reasonably be expected to be private). Taken together, the factors suggest that Stitt lacked a reasonable expectation of privacy in the turnaround, and the turnaround therefore was not curtilage.

Stitt next alleges that the detectives ventured beyond the turnaround and entered constitutionally protected curtilage—the backyard—before spying Stitt at the backdoor. One detective admitted he "[didn't] know" whether "[his] front tires [were] in the grass" beyond the turnaround when he stopped the car. But the magistrate judge explicitly found that the detectives remained in the turnaround, noting that "there was no clear end to the driveway and [the detective] credibly testified that he stepped out onto the gravel driveway when he exited his car, which he parked in the driveway." The district court adopted these factual findings, and unless

Stitt pinpoints a clear error, we cannot overturn these findings on appeal. Stitt merely asks us to reinterpret the detective's uncertain testimony in his favor and therefore fails to show clear error.

A final point. Stitt emphasizes the property's rural, low-income character, arguing that such properties lack clear divisions between curtilage and public areas. Affirming the denial of his suppression motion, he argues, would unfairly privilege wealthy homeowners who can afford fences and bushes to separate public driveways from private backyards. But a railroad tie, a large rock, or a sign would have marked the edge of the backyard and warned visitors not to proceed further. Testimony established that no such marker existed on the property. We discern no error in the denial of Stitt's motion to suppress.

**III.**

Next, Stitt alleges that the district court's failure to instruct the jury on venue requires us to vacate his conviction. Because he neglected to object to the venue-instruction omission at trial, we review for plain error. *United States v. Cooper*, 40 F. App'x 39, 40 (6th Cir. 2002). A plain error affects a defendant's substantial rights and seriously questions the fairness, integrity or public reputation of the judicial proceedings. *United States v. Smith*, 601 F.3d 530, 541 (6th Cir. 2010). We reverse for plain error in jury instructions upon a showing that "taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice." *United States v. Semrau*, 693 F.3d 510, 528 (6th Cir. 2012) (quoting *United States v. Morrison*, 594 F.3d 543, 546 (6th Cir. 2010)). Stitt claims to meet this exacting standard because the evidence at trial insufficiently established venue in the Eastern District of Tennessee, and the jury—if properly instructed—would have found accordingly.

Venue is indeed a question of fact for the jury, *United States v. Redfearn*, 906 F.2d 352, 354 (8th Cir. 1990), but unlike other facts in the government's case, a preponderance of the

evidence suffices, *United States v. Beddow*, 957 F.2d 1330, 1335 (6th Cir. 1992). Here, Hostetler's identification of the gun with which Stitt threatened her in the Eastern District matched the detective's identification of the gun he found in the Middle District. Additionally, the woman who drove Stitt from the Eastern District to the Middle District never saw Stitt stop, pick up, or discard anything. When, as here, the evidence sufficiently establishes venue, and the defendant fails to request a venue instruction, the instruction's absence is not plain error. *See United States v. Massa*, 686 F.2d 526, 530 & n.10 (7th Cir. 1982) (collecting cases).

## IV.

Finally, Stitt claims that none of the nine convictions relied upon by the district court in sentencing him as an armed career criminal qualify as ACCA predicates. That misclassification, he continues, triggered the ACCA's fifteen-year minimum sentence—far exceeding the ten-year statutory maximum for felon-in-possession convictions—and requires us to vacate his sentence. *Compare* 18 U.S.C. § 924(e)(1), *with id.* § 924(a)(2). The government concedes that two convictions for facilitation of aggravated burglary and one conviction for attempted aggravated burglary are not ACCA predicate offenses. *See Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015). We therefore consider whether at least three of Stitt's six convictions for Tennessee aggravated burglary qualify as violent felonies. *See* 18 U.S.C. § 924(e)(1) (requiring three previous violent-felony convictions to impose a fifteen-year minimum sentence under the ACCA).

In its enumerated-offense clause, the ACCA singles out offenses that, if "punishable by imprisonment for a term exceeding one year," 18 U.S.C. § 924(e)(2)(B), always constitute violent felonies, including burglary, *id*. § 924(e)(2)(B)(ii). A state burglary offense falls within that clause if it describes the "generic" version of burglary. *Descamps v. United States*, 133 S.

Ct. 2276, 2281 (2013). Generic burglary "ha[s] the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 599 (1990). Tennessee aggravated burglary therefore qualifies as generic burglary "only if the statute's elements are the same as, or narrower than, those of the generic offense." *Descamps*, 133 S. Ct. at 2281 (the "categorical approach"). If the statute includes broader elements than generic burglary, but it "sets out one or more elements . . . in the alternative," the statute still qualifies as generic burglary if the government establishes that Stitt was necessarily convicted of the aggravated-burglary alternative that matches the elements of generic burglary. *Id.* (the "modified-categorical approach").

Tennessee aggravated burglary "is burglary of a habitation," Tenn. Code Ann. § 39-14-403, where "habitation" describes a structure for overnight accommodation; an occupied self-propelled vehicle designed for overnight accommodation; or a separately secured or occupied portion of or structure appurtenant to such a structure or vehicle, *id.* § 39-14-401(1). Both parties invite us to evaluate Stitt's aggravated-burglary convictions under the modified-categorical approach, noting that aggravated burglary's inclusion of self-propelled vehicles expands the statute beyond generic burglary, which requires buildings or structures. *See Taylor*, 495 U.S. at 599 ("A few States' burglary statutes, however, . . . define burglary more broadly [than generic burglary], *e.g.*, . . . by including places, such as automobiles and vending machines, other than buildings."); *see also United States v. Priddy*, 808 F.3d 676, 687 (6th Cir. 2015) (White, J., concurring) ("Tennessee's expansive definition of 'habitation' . . . likely renders its aggravated burglary statute broader than *Taylor*'s definition of generic burglary.").

We may not use the modified-categorical approach here—our precedents foreclose it. We repeatedly have found that "a Tennessee conviction for aggravated burglary is *categorically*

a violent felony under the ACCA's enumerated-offense clause." *Priddy*, 808 F.3d at 684 (majority opinion) (emphasis added); *see also United States v. Nance*, 481 F.3d 882, 887 (6th Cir. 2007) (holding that "the weight of authority indicates that Tennessee's aggravated burglary statute is generic"). Only the full court may invalidate the holdings of *Priddy* and *Nance*. Stitt's six aggravated-burglary convictions categorically qualify as ACCA predicates. The district court therefore committed no error in deeming Stitt an armed career criminal.

## V.

We AFFIRM Stitt's conviction and sentence.