RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0134p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT



UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 14-6158

VICTOR J. STITT, II,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Winchester.
No. 4:12-cr-00019-1—Harry S. Mattice Jr., District Judge.

Decided and Filed:  June 27, 2017

Before:  COLE, Chief Judge; BOGGS, BATCHELDER, MOORE, CLAY, GIBBONS,
ROGERS, SUTTON, COOK, McKEAGUE, GRIFFIN, KETHLEDGE,
WHITE, STRANCH, and DONALD, Circuit Judges.[*]

_____

## COUNSEL

**ON SUPPLEMENTAL BRIEF:**  Timothy C. Ivey, FEDERAL PUBLIC DEFENDER'S
OFFICE, Cleveland, Ohio, for Appellant.  Terra L. Bay, UNITED STATES ATTORNEY'S
OFFICE, Chattanooga, Tennessee, Debra A. Breneman, UNITED STATES ATTORNEY'S
OFFICE, Knoxville, Tennessee, for Appellee.

COOK, J., delivered the opinion of the court in which COLE, C.J., and BOGGS,
BATCHELDER, MOORE, GRIFFIN, WHITE, STRANCH, and DONALD, JJ., joined.
BOGGS, J. (pp. 13–24), delivered a separate concurring opinion in which BATCHELDER,
MOORE, WHITE, and STRANCH, JJ., joined.  WHITE, J. (pp. 25–32), delivered a separate
concurring opinion in which BATCHELDER, MOORE, and STRANCH, JJ., joined.  SUTTON,
J. (pp. 33–40), delivered a separate dissenting opinion in which CLAY, GIBBONS, ROGERS,
McKEAGUE, and KETHLEDGE, joined.

---

[*]The clerk submitted this case to the en banc panel of the Sixth Circuit Court of Appeals before Judge
Amul Thapar received his commission on May 25, 2017.

---

**OPINION**

---

COOK, Circuit Judge. In 2007, we held that a conviction under Tennessee's aggravated-burglary statute, Tenn. Code Ann. § 39-14-403, categorically qualifies as an enumerated "violent felony" that triggers a sentencing enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). *United States v. Nance*, 481 F.3d 882, 887 (6th Cir. 2007); *see also United States v. Priddy*, 808 F.3d 676, 684 (6th Cir. 2015). Several years later, we reached the opposite conclusion about Ohio's similarly worded burglary statute, Ohio Rev. Code § 2911.12(A)(3). *United States v. Coleman*, 655 F.3d 480, 482 (6th Cir. 2011), *abrogated on other grounds by Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015). We resolve this conflict by overruling *Nance* and holding that a conviction for Tennessee aggravated burglary is not a violent felony for purposes of the ACCA.

**I.**

During a heated argument in 2011, Victor Stitt tried to shove a loaded handgun into his girlfriend's mouth while threatening to kill her. When a neighbor called the police, Stitt fled to his mother's home, where he surrendered to authorities after a brief foot chase. Detectives recovered the gun lying on the ground within his reach.

A jury found Stitt guilty of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g). Due to his nine prior "violent felony" convictions—including six for Tennessee aggravated burglary—the court designated Stitt an armed career criminal under the ACCA and sentenced him to 290 months' imprisonment.

On appeal, Stitt argued that none of his nine convictions qualify as violent felonies. The government conceded that *Johnson v. United States* invalidated the violent-felony status of three of his prior offenses, leaving only his six aggravated-burglary convictions at issue. *See* 135 S. Ct. at 2563. Bound by *Nance*—which held that Tennessee aggravated burglary fits the Supreme Court's definition of "generic burglary"—we affirmed his sentence. *United States v. Stitt*, 637 F. App'x 927, 931–32 (6th Cir. 2016).

Stitt comes before us now on a petition for rehearing en banc, which we granted to resolve whether a conviction for Tennessee aggravated burglary constitutes a violent felony under the ACCA. *United States v. Stitt*, 646 F. App'x 454 (6th Cir. 2016). Because we conclude that Tennessee's aggravated-burglary statute is broader than the definition of generic burglary, we hold that a conviction under the statute does not qualify as an ACCA predicate offense.

## II.

The ACCA imposes a fifteen-year minimum sentence on any defendant who, having been convicted of three prior "violent felonies," is found guilty of being in possession of a firearm. *See* 18 U.S.C. §§ 922(g), 924(e). Although the ACCA enumerates burglary as one of several "violent felonies" that can lead to the fifteen-year minimum, *see* § 924(e)(2)(B)(ii), not every conviction labeled as "burglary" under state law qualifies as a violent felony. *Taylor v. United States*, 495 U.S. 575, 590–92 (1990). Instead, Congress intended to encompass only those convictions arising from burglary statutes that conform to, or are narrower than, the "generic" definition of burglary. *Id.* at 598.

To determine whether Stitt's aggravated-burglary convictions qualify, we apply the "categorical approach." *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). Under this approach, we compare the statutory elements of Tennessee aggravated burglary to the elements of "generic burglary." *See id.* If the elements of Tennessee aggravated burglary "are the same as, or narrower than, those of [generic burglary,]" Stitt's convictions count as violent felonies under the ACCA. *Id.*

### A. Applying the Categorical Approach

Tennessee defines aggravated burglary as the "burglary of a habitation," Tenn. Code Ann. § 39-14-403, and defines "habitation" as "any structure . . . which is designed or adapted for the overnight accommodation of persons," *id.* § 39-14-401(1)(A). The term "habitation" includes "mobile homes, trailers, and tents," as well as any "self-propelled vehicle that is designed or adapted for the overnight accommodation of persons and is actually occupied at the time of initial entry by the defendant." *Id.*

By contrast, the Supreme Court has determined that under the ACCA, "generic burglary" means "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor*, 495 U.S. at 598. Although the Court left "building or other structure" undefined, it has confirmed repeatedly that vehicles and movable enclosures (e.g., railroad cars, tents, and booths) fall outside the definitional sweep of "building or other structure." *See id.* at 599; *Mathis v. United States*, 136 S. Ct. 2243, 2250 (2016) (explaining that Iowa's burglary statute "covers more conduct than generic burglary" because it "reaches a broader range of places: 'any building, structure, *[or] land, water, or air vehicle.*'" (alteration in original) (citations omitted)); *Nijhawan v. Holder*, 557 U.S. 29, 35 (2009) (differentiating between breaking into a "vessel," which would not qualify as generic burglary, and "breaking into a building," which would); *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 186–87 (2007) (noting that Massachusetts defines burglary to include breaking into a vehicle, "which falls outside the generic definition of 'burglary,' for a car is not a 'building or structure'" (citations omitted)); *Shepard v. United States*, 544 U.S. 13, 15–16 (2005) ("The [ACCA] makes burglary a violent felony only if committed in a building or enclosed space . . . , not in a boat or motor vehicle.").

By including "mobile homes, trailers, and tents," as well as any "self-propelled vehicle," Tennessee's aggravated-burglary statute includes exactly the kinds of vehicles and movable enclosures that the Court excludes from generic burglary. But the statute comes with a wrinkle: it criminalizes the unauthorized entry into vehicles and movable enclosures (with criminal intent) *only if* they are "designed or adapted for the overnight accommodation of persons." Tenn. Code Ann. § 39-14-401(1). In other words, it restricts the ambit of the statute to only those vehicles and movable enclosures that are habitable.

The issue before us, then, is whether a burglary statute that covers vehicles or movable enclosures only if they are habitable fits within the bounds of generic burglary. We hold that it does not. Our reading of *Taylor* and its progeny supports this conclusion.

To start, *Taylor* emphasizes a place's form and nature—not its intended use or purpose—when determining whether a burglary statute's locational element is a "building or other structure." *Taylor*, 495 U.S. at 598; *United States v. Rainer*, 616 F.3d 1212, 1215 (11th Cir.

2010) ("The definitional focus [of generic burglary] is on the nature of the property or place, not on the nature of its use at the time of the crime."), *abrogated on other grounds as recognized by United States v. Howard*, 742 F.3d 1334, 1344–45 (11th Cir. 2014); *United States v. White*, 836 F.3d 437, 445–46 (4th Cir. 2016) (finding it "immaterial" to the categorical approach that West Virginia's burglary statute confines coverage to vehicles "primarily designed for human habitation").

Additionally, throughout *Taylor*, the Court repeatedly distinguishes vehicles and the like from "building[s] and other structure[s]." 495 U.S. at 598. It begins by offering California common law and Texas's burglary statute—both of which criminalize the unauthorized entry of vehicles—as examples of overly broad burglary definitions. *Id.* at 591 (describing California burglary as "so broadly [defined] as to include shoplifting and theft of goods from a 'locked' but unoccupied automobile" and Texas burglary as "includ[ing] theft from [an] . . . automobile"). The *Taylor* Court then explains that because they "includ[e] places, such as *automobiles*," they define crimes falling outside the generic definition of burglary. *Id.* at 599 (emphasis added). Similarly, in its discussion of Taylor's prior burglary convictions, the Court recognized that Missouri's second-degree burglary statute was broader than generic burglary because it included "breaking and entering 'any booth or tent, or any boat or vessel, or railroad car.'" *Id.* (citations omitted).

Finally, the Supreme Court has held fast to the distinction between vehicles and movable enclosures versus buildings and structures in every single post-*Taylor* decision. *See Mathis*, 136 S. Ct. at 2250[1]; *Nijhawan*, 557 U.S. at 35; *Duenas-Alvarez*, 549 U.S. at 186–87; *Shepard*, 544 U.S. at 15–16. The Court's adherence to this distinction over the course of nearly thirty years persuades us that the Court meant exactly what it said: vehicles and movable enclosures fall outside the scope of generic burglary. *See Mathis*, 136 S. Ct. at 2254 ("[A] good rule of thumb for reading our decisions is that what they say and what they mean are one and the same.").

---

[1]Like the Tennessee statute at issue here, Iowa's burglary statute limited its scope to vehicles "adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity." Iowa Code § 702.12 (2013). Nonetheless, the *Mathis* Court explained that Iowa's burglary statute did not categorically qualify as generic burglary because it criminalized the entry of "land, water, or air vehicle[s]." *See Mathis*, 136 S. Ct. at 2250.

B.      The Government's Response

The government disputes our reading of *Taylor*, offering two arguments to broaden "building or other structure" so as to encompass anything "habitable," even if movable or temporary.  Neither argument persuades us.

*First*, latching onto the *Taylor* Court's statement "that Congress meant by 'burglary' the generic sense in which the term is now used in the criminal codes of most states," 495 U.S. at 598, the government conducts its own fifty-state survey of the burglary statutes in effect at the time the Court decided *Taylor*.  It concludes that (a) the overwhelming majority of states included vehicles and movable enclosures in their burglary statutes, and (b) a little more than half the states' burglary statutes specifically "covered movable structures adapted for specific purposes such as overnight accommodation, business, or education."  This, the government asserts, shows that the *Taylor* Court meant to include such "movable structures" under "buildings or other structures."

*Second*, the government argues that because the Model Penal Code's ("MPC") burglary definition—which includes occupied structures—"served as the basis" for the *Taylor* Court's definition of generic burglary, the Court intended to include occupied structures under the phrase "building or other structure."  The government hangs its entire argument on a single footnote in which the Court explains that the generic definition of burglary "approximates that adopted by the drafters of the [MPC]."  *Id*. at 598 n.8.

Both the government's arguments suffer from the same problem: they ignore the Court's clear and unambiguous language that "building or other structure" excludes *all* things mobile or transitory.  Indeed, the government focuses its arguments *not* on interpreting the words the Court chose to define generic burglary, but on divining Congress's intent from the MPC and state statutes.  Given the Court's statement that burglary statutes that "includ[e] places, such as automobiles" fall outside the scope of generic burglary—and its steadfast repetition of similar language in later cases—we find the government's arguments unavailing.  *Id*. at 599.

Moreover, even if we accept the government's invitation to focus on the *Taylor* Court's own determination of congressional intent, its arguments still fail.  To understand why, start with

the question addressed in *Taylor*: how should the Court define "burglary" under the ACCA when the statute supplies no definition? *Id.* at 577. In answering the question, the Court drew on three sources: (1) a definition of "burglary" from a prior version of the ACCA, (2) the MPC, and (3) a general sense of burglary derived from a prominent criminal law treatise. We too review these three sources.

When Congress enacted the ACCA in 1984, it defined burglary as "any felony consisting of entering or remaining surreptitiously within a *building* that is property of another with intent to engage in conduct constituting a Federal or State offense." *Id.* at 581 (emphasis added) (quoting 18 U.S.C. § 1202(c)(9) (1984)). Congress's choice of "building" necessarily excluded anything movable.

Congress left out this 1984 definition of burglary when it amended the ACCA in 1986. But in formulating a replacement, the Court hewed closely to the 1984 definition because it believed Congress intended to retain the original definition's substance. It observed that "nothing in the [legislative] history [suggested] that Congress intended in 1986 to replace the 1984 'generic' definition of burglary with something entirely different."[2] *Id.* at 590, 598. The Court therefore settled on a definition of generic burglary that "[wa]s practically identical to the" one Congress had provided in 1984 (which excluded vehicles and movable enclosures). *Id.* at 598.

The Court's definitional emphasis on "the nature of the property or place" becomes more apparent when contrasting generic burglary with the MPC's burglary definition. *Rainer*, 616 F.3d at 1215. The MPC reads: "[a] person is guilty of burglary if he enters a building or *occupied structure*, or separately secured or occupied portion thereof, with purpose to commit a crime therein, unless . . . the actor is licensed or privileged to enter." *Taylor*, 495 U.S. at 598 n.8 (emphasis added) (quoting American Law Institute, Model Penal Code § 221.1 (1980)). The *Taylor* Court could have adopted the MPC's language of "building or *occupied* structure." *See id.* (emphasis added). Instead, it omitted "occupied," signaling that for the locational

---

[2]The Court even suggested that "the deletion of the 1984 definition of burglary may have been an inadvertent casualty of a complex drafting process." *Id.* at 589–90.

element, a place's form—rather than its adaptation for habitability—marks the dividing line between generic and non-generic burglary. *See id.* at 598.

Finally, the Court sought to craft a definition of generic burglary that captured the elements common to state burglary statutes.[3] To help distill those elements, the Court turned to the 1986 edition of Wayne LaFave's classic treatise, *Substantive Criminal Law*. *See Taylor*, 495 U.S. at 598; *see also United States v. Grisel*, 488 F.3d 844, 848–49 (9th Cir. 2007) (en banc). Regarding the locational element, LaFave found that "[m]odern statutes . . . typically describe the place as a 'building' or 'structure,'" but that some "also extend to still *other places, such as all or some types of vehicles.*" Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 8.13(e) (1986) (emphasis added). Clearly, LaFave viewed buildings and structures as distinct from "vehicles." And the Court, in turn, adopted the same "typical" locational element—"building" or "structure"—used by states while omitting any reference to vehicles, suggesting that it, like LaFave, saw vehicles as distinct from structures.

In sum, the *Taylor* Court's consultation of the three sources—particularly its rejection of the MPC's "occupied structure" and its adoption of LaFave's description of the locational element—refutes the government's argument that we should interpret "building and other structure" in strict conformance with the MPC and the government's fifty-state survey. *See Grisel*, 488 F.3d at 849 ("[T]he Supreme Court in *Taylor* defined burglary using a generic definition that we are bound to obey even if we think that the definition is deficient."). Accordingly, we reject the view that a state burglary statute that limits its scope to only those vehicles and movable enclosures that are habitable fits under the generic definition of burglary.

---

[3]"Although the exact formulations vary [for each state], the generic, contemporary meaning of burglary contains *at least* the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime. *See* LaFave & Scott *supra*, n.3 . . . § 8.13(c), p. 471 (modern statutes 'typically describe the place as a "building" or "structure"') . . . ." *Taylor*, 495 U.S. at 598 (emphasis added) (footnote omitted).

C.      *Nance*

Our conclusion that Tennessee's aggravated-burglary statute sweeps more broadly than generic burglary conflicts with our decision in *Nance*, which held that the statute matches the ACCA's definition of generic burglary.[4]  481 F.3d at 888.  We now overrule *Nance*.

In *Nance*, we correctly stated that Tennessee "[a]ggravated burglary occurs when an individual enters a habitation 'without the effective consent of the property owner' and, . . . intends to commit a felony."  *Id.* (alteration and omission in original) (quoting *United States v. Sawyers*, 409 F.3d 732, 737 (6th Cir. 2005)).  We neglected, however, to scrutinize the statutory definition of "habitation," which includes vehicles, tents, and other movable enclosures.  *See* Tenn. Code Ann. § 39-14-401(1).  We compounded this error by comparing the elements of Tennessee's aggravated-burglary statute to the following truncated definition of generic burglary: a burglary "committed in a building or enclosed space."  *Nance*, 481 F.3d at 888 (quoting *Shepard*, 544 U.S. at 16).  But the full definition from *Shepard* states that the ACCA "makes burglary a violent felony only if committed in a building or enclosed space . . . *not in a boat or motor vehicle*."  544 U.S. at 15–16 (emphasis added).  As a result of comparing an incomplete definition of Tennessee aggravated burglary to an incomplete definition of generic burglary, we incorrectly concluded that a "habitation" is a "building or enclosed space" and that a conviction for Tennessee aggravated-burglary therefore constituted a violent felony.  *Nance*, 481 F.3d at 888.

We were not alone in shortcutting the categorical-approach analysis.  At least two other circuits committed the same error of looking at the statutory elements of burglary statutes without considering the definition of key terms such as "occupied structure" or "habitation."  *See United States v. Field*, 39 F.3d 15, 20 (1st Cir. 1994); *United States v. Silva*, 957 F.2d 157, 162 (5th Cir. 1992).

Where courts have accounted for these statutory definitions, most have held that statutes criminalizing the burglary of vehicles and movable enclosures, even where limited to

---

[4]Bound by the precedent set in *Nance*, we held in *Priddy* that a defendant's conviction for Tennessee aggravated burglary qualified as a violent felony.  808 F.3d at 684.  *Priddy* did not expand further on *Nance*'s reasoning.

"habitations" or "occupied structures," fall outside the generic definition of burglary. *Compare White*, 836 F.3d at 446; *United States v. Bess*, 655 F. App'x 518, 519 (8th Cir. 2016) (per curiam); *Coleman*, 655 F.3d at 482; *Rainer*, 616 F.3d at 1215; *Grisel*, 488 F.3d at 851; *United States v. Bennett*, 100 F.3d 1105, 1109 (3d Cir. 1996), *with United States v. Spring*, 80 F.3d 1450, 1462 (10th Cir. 1996).[5]

In short, we overrule *Nance* because that case misapplied the categorical approach. As explained above, a violation of Tennessee's aggravated-burglary statute is not categorically a violent felony.

## III.

Our conclusion that a conviction under Tennessee's aggravated-burglary statute does not categorically qualify as a violent felony does not end our inquiry. Even if a state burglary statute criminalizes more conduct than generic burglary, it may do so by listing multiple elements in the alternative, thus setting forth different crimes, and one or more of those crimes might match the definition of generic burglary. *Mathis*, 136 S. Ct. at 2248–49 (citing *Shepard*, 544 U.S. at 26). If the statute does list alternative elements, we apply the "modified" categorical approach to establish which of the alternative crimes forms the basis of the defendant's conviction.

Here, both parties agree that "the definition of habitation is indivisible"—that is, it lays out alternative *means* to fulfilling a single element rather than alternative *elements*. *See id.* at 2251 n.1 (abrogating *United States v. Ozier*, 796 F.3d 597 (6th Cir. 2015)). Our review confirms that Tennessee's aggravated-burglary statute is indivisible.

To determine a statute's divisibility, we look first at the language of the statute and state-court decisions; if neither source provides a definitive answer, we turn to the record of conviction. *See id.* at 2249, 2256; *see also United States v. Ritchey*, 840 F.3d 310, 317–18 (6th Cir. 2016). If we still cannot discern whether a statute presents elements or means, the statute is indivisible. *Mathis*, 136 S. Ct. at 2257.

---

[5]The dissent rejects the way we count the circuits, arguing that the circuit split is actually more or less even. (Dissent Op. at 7–8.) But the dissent's own count misleads—two of the three cases it claims in its column shortcut the categorical-approach analysis. *See Nance*, 481 F.3d at 888; *Silva*, 957 F.2d at 162. And it fails to recognize *Grisel*—which falls in our column—as the controlling precedent in the Ninth Circuit.

The *Mathis* Court explained that a statute is indivisible when it lists examples to clarify a term, as opposed to listing alternative elements to define multiple crimes. *Id.* The Court offered two cases that examined statutes deemed indivisible because they listed "illustrative examples" of various means to fulfilling a single element. *Id.* at 2256. One of those cases—*Howard*, 742 F.3d at 1348—guides our analysis here.

In *Howard*, the Eleventh Circuit reviewed Alabama's third-degree burglary statute, which defined building as "[a]ny structure which may be entered and utilized by persons for business, public use, lodging or the storage of goods." 742 F.3d at 1348 (alteration in original) (quoting Ala. Code § 13A-7-1(2) (1979)). According to the statutory definition in force at the time, "structure . . . *includes* any vehicle, aircraft or watercraft used for the lodging of persons or carrying on business therein" and also "*includes* any railroad box car or other rail equipment or trailer or tractor trailer or combination thereof." *Id.* (quoting Ala. Code § 13A-7-1(2) (1979)). Because "[t]he items that follow each use of the word 'includes' in the statute are non-exhaustive examples," the Eleventh Circuit held that Alabama's third-degree burglary statute delineated means rather than elements, rendering the statute indivisible. *Id.*

Tennessee's aggravated-burglary statute follows the pattern of Alabama's third-degree burglary statute to a tee. It defines "habitation" as "any structure . . . which is designed or adapted for the overnight accommodation of persons." Tenn. Code Ann. § 39-14-401(1)(A). Tennessee's definition of habitation "*includ[es]* . . . mobile homes, trailers, and tents"; it also "*[i]ncludes* a self-propelled vehicle that is designed or adapted for the overnight accommodation of persons." *Id.* § 39-14-401(1)(B) (emphasis added). This non-exhaustive list of "illustrative examples" therefore sets forth means rather than elements. Additionally, our review of the case law reveals no decision suggesting otherwise. As such, Tennessee's aggravated-burglary statute is indivisible, thereby foreclosing application of the modified categorical approach.

**IV.**

Because Tennessee's aggravated-burglary statute is both broader than generic burglary under the categorical approach and indivisible, a conviction under the statute does not count as a violent felony under the ACCA.[6] We therefore REVERSE and REMAND for resentencing consistent with this opinion.

---

[6]Stitt also argues that Tennessee's aggravated-burglary statute lacks the requisite mens rea to qualify as generic burglary. Because we hold that his conviction does not qualify as generic burglary based on the underlying statute's inclusion of vehicles and movable enclosures, we need not address this argument.

―――――――――

**CONCURRENCE**

―――――――――

BOGGS, Circuit Judge, concurring.

**I**

I concur with my colleagues that the Supreme Court's decision in *Taylor* and subsequent cases settle the question before us today and require us to overrule *Nance*. I write separately, however, to respond to statements made in the dissenting opinion regarding (1) whether burglary of a vehicle "designed or adapted for the overnight accommodation of persons," Tenn. Code § 39-14-401(1), was a kind of burglary that the *Taylor* Court would have counted as a "generic" ACCA burglary, and (2) whether vehicles designed or adapted for overnight accommodation are dwellings.

**A**

The dissent's argument, at bottom, is this: the Tennessee statute before us punishes burglary of a vehicle only when the vehicle is designed or adapted for overnight accommodation (i.e., only when the vehicle is a dwelling), unlike statutes that punish burglary of *any* vehicle or burglary of vehicles designed for business, and thus the Tennessee statute before us goes no further than to punish burglary of a dwelling. Any burglary of a dwelling, the dissent reasons, must necessarily be a generic ACCA burglary, because the ACCA's definition of burglary is "broader" than (and thus wholly includes as a subset) common-law burglary of a dwelling. So the Tennessee statute is not too broad.

I will put aside, for now, the question whether these vehicles are, in fact, common-law dwellings, for even if they are, the Tennessee statute is still broader than generic ACCA burglary, and *Taylor* still requires us to reverse *Nance*.

That is because, if we are bound to follow the Supreme Court's ruling in *Taylor*, then we are bound to apply its definition of generic burglary—as the majority notes, "a good rule of thumb" for reading the Court's decisions is that what the Court says and what it means "are one

and the same," *Mathis v. United States*, 136 S. Ct. 2243, 2254 (2016), and what the Court said in *Taylor* is *not*, as the dissent would have it, that generic ACCA burglary is "broader" than burglary of a dwelling. Indeed, the Court uses the term "broader" (or "broad" or "broadly") only (1) to describe definitions in the Model Penal Code as encompassing more conduct than traditional common-law burglary, *Taylor v. United States*, 495 U.S. 575, 580 (1990); (2) to discuss the extent to which Congress, in enacting the current version of the ACCA, intended to include more crimes as predicates for the career-criminal designation, *id.* at 583 ("[T]he time has come to broaden [the] definition [of career criminal] so that we may have a greater sweep and more effective use of this important statute." (quoting 132 Cong. Rec. 7697 (1986))), 586 ("H.R. 4639, on the other hand, was seen as too broad."); (3) to cite a floor statement proposing a definition of ACCA burglary that was "intended to be broader than common law burglary"—but that was not adopted, 590 n.5 (quoting 135 Cong. Rec. 23519 (1989)); (4) to describe state statutory definitions of burglary that encompass more conduct than traditional common-law burglary, 591 (describing California statute as defining burglary "so broadly as to include shoplifting"); or—and this cuts against the dissent's argument—(5) to describe state statutes that "includ[e] places, such as automobiles," as "defin[ing] burglary more broadly" *than generic ACCA burglary*, *id.* at 599.

Never, not once, does the *Taylor* Court state or imply that generic ACCA burglary—as opposed to one of the *rejected* proposed definitions of generic burglary—is "broader" than common-law burglary of a dwelling so as to include all burglaries of dwellings within the set of generic ACCA burglaries. *Contra* Dissenting Op. at 34 (stating that the Court "opted instead for a 'broader "generic" definition' drawn from the Model Penal Code" (emphasis omitted) and citing pages 580, 592, and 599 of *Taylor*, none of which affirm the proposition that *Taylor*'s definition of generic ACCA burglary is "broader" than common-law burglary and "drawn from" the Model Penal Code).

None of the above, of course, *refutes* the dissent's argument; it merely calls into question a premise on which the dissent's argument rests. *Taylor*'s pronouncement of its definition of generic ACCA burglary, however, *does* refute the dissent. *Taylor* supports its definition of generic ACCA burglary ("an unlawful or unprivileged entry into, or remaining in, a *building or*

*other structure*, with intent to commit a crime," 495 U.S. at 598 (emphasis added)) with a single source: "Wayne LaFave's classic treatise," the majority notes, which identifies the place ("the place," in the singular) of a burglary as a "building" or "structure" and then notes that "[s]ome burglary statutes also extend to *still other places*, such as all *or some* types of vehicles." Wayne R. LaFave & Austin W. Scott, Jr., 2 *Substantive Criminal Law* § 8.13, at 471 (1986) (emphases added) (footnote omitted).

True, "some types of vehicles" could, in the abstract, refer to vehicles designed for trade or other purposes besides the overnight accommodation of persons. But here, "some types of vehicles" refers specifically to vehicles *adapted for* the overnight accommodation of persons. That means that vehicles, even if adapted for overnight habitation, are "other places" that *do not* fit within the definition of "building or structure" adopted by the *Taylor* Court.

We know this because, on the *very same page* of LaFave's treatise that the Supreme Court cites as the sole support for its "building or structure" definition (page 471), the treatise cites the following Texas statute as an example of a statute that punishes burglary of "other places" *rather than* buildings or structures:

§ 30.01. Definitions

In this chapter:

(1) "Habitation" means a structure or vehicle that is adapted for the overnight accommodation of persons, and includes:
(A) each separately secured or occupied portion of the structure or vehicle; and
(B) each structure appurtenant to or connected with the structure or vehicle.

§ 30.02. Burglary

(a) A person commits an offense if, without the effective consent of the owner, he:
(1) enters a *habitation*, or a building (or any portion of a building) not then open to the public, with intent to commit a felony or theft;

. . . .

Tex. Penal Code §§ 30.01, 30.02 (1986) (emphasis added).

Strikingly, this Texas statute punishes the burglary of buildings or habitations, where habitation is defined as a structure or a vehicle "that is adapted for the overnight accommodation

of persons." If the Supreme Court is, as it says it is, relying on LaFave's treatise to provide the "generic, contemporary meaning of burglary," *Taylor*, 495 U.S. at 598, then it would seem that the Supreme Court, like LaFave, has found that Texas's statute punishes burglary of "other places," LaFave & Scott, *supra*, at 471, other than buildings or structures.

Compare the Texas statute with the Tennessee statute before us, which defines "habitation" as "any structure, including buildings, module units, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodation of persons," including "a self-propelled vehicle that is designed or adapted for the overnight accommodation of persons and is actually occupied at the time of initial entry by the defendant." Tenn. Code § 39-14-401(1). Sure, the Tennessee statute is narrower than the Texas statute to the extent that it applies only when the vehicle is "actually occupied at the time of" the burglary. But this distinction is irrelevant to our analysis; as the majority opinion notes, *Taylor*'s definition is the definition of "a place's form and nature," not its *use* at the time of the crime. Majority Op. at 4. And no one argues here that the presence (or not) of an individual within a burgled vehicle temporarily *converts* the vehicle into a building or structure—rather, the question is whether the vehicle, if adapted for overnight accommodation, *is* a building or structure for the purpose of generic burglary.

Because the Supreme Court, in pronouncing the very definition of generic burglary that we must apply today to evaluate convictions under the Tennessee statute, rejected the nearly identically worded Texas statute above as too *broadly* defining burglary to qualify as generic ACCA burglary, then the majority is right to reject the Tennessee statute as broader than generic ACCA burglary for the same reason.

The dissent notes that the Supreme Court's discussions of various burglary statutes (such as Missouri's statute, in *Taylor*, or Iowa's, in *Mathis*) aren't really applicable to Tennessee's statute because those statutes "covered *all* vehicles." Dissenting Op. at 36. But the Supreme Court has made clear that burglary statutes are broader than ACCA generic burglary when they include burglary of *any vehicle at all*—even just vehicles adapted for overnight accommodation. The Missouri and Iowa statutes may have been so broad as to include the entire class of vehicles, but nothing in *Taylor* or any other Supreme Court decision supports the idea that, if those

statutes had limited their inclusion of vehicles to a subset of habitable vehicles, they would have been narrow enough to count as ACCA predicates.  The majority opinion's discussion in Part II.B supports this point as well: the *Taylor* Court considered *and rejected* a definition such as "building or *occupied* structure."  Majority Op. at 7; *see Taylor*, 495 U.S. at 598 & n.8.  The Court could have said "building or structure or dwelling."  It could have said "building or structure or *other* dwelling."  It could have said "building or structure *or other place adapted for overnight accommodation*."  But it didn't.  It said "building or structure," and that is the definition that we must apply.  If the burgled place is not a building or structure, then the burglary is not generic.

B

I would also note that despite *Taylor*'s *references* to the Model Penal Code, it did not *adopt* a definition of burglary "drawn from" the Model Penal Code.  *Contra* Dissenting Op. at 34.  The Court's "building or structure" definition *approximates* usage from the Model Penal Code, to be sure, but the Model Penal Code's definition of burglary cited in *Taylor* is undoubtedly *broader than generic ACCA burglary* because it includes burglary of vehicles used only for business purposes:

> § 221.0. Definitions.
>
> In this Article, unless a different meaning plainly is required:
>
> (1) "occupied structure" means any structure, vehicle or place adapted for overnight accommodation of persons, *or for carrying on business therein*, whether or not a person is actually present.

Model Penal Code § 221.0 (Am. Law Inst. 1985) (emphasis added).

> § 221.1. Burglary.
>
> (1) Burglary Defined.  A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with purpose to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.

Model Penal Code § 221.1.  Thus, for example, under the Model Penal Code, an eleven-year-old's surreptitious entry into the freezer compartment of an unattended Good Humor ice cream truck would be a burglary of an occupied structure.

What *Taylor does* characterize as "practically identical" to its definition of generic burglary is the 1984 definition of burglary from the statute that preceded the ACCA.  *Taylor*, 495 U.S. at 598.  That statute defined burglary as "any felony consisting of entering or remaining surreptitiously within *a building* that is property of another with intent to engage in conduct constituting a Federal or State offense."  Armed Career Criminal Act of 1984, Pub. L. No. 98-473, § 1803, 98 Stat. 1837, 2185 (emphasis added).  No one would argue that "building" in the Armed Career Criminal Act of 1984 had so expansive a meaning as to cover vehicles, even those adapted for the overnight accommodation of persons.  Rather, the Court's reference to this statute shows that it had buildings in mind, not "dwellings," when it defined the place of a generic burglary as a "building or structure."

The majority thus rightly determines that *Taylor*'s generic ACCA burglary is *not* Model Penal Code burglary, nor is it "broader" than Model Penal Code burglary (so as to include all Model Penal Code burglaries as a subset), nor is it "broader" than common-law burglary (so as to include all common-law burglaries as a subset).  *Taylor*'s description of generic ACCA burglary as including structures "other than dwellings," such as warehouses, in no way requires modifying *Taylor*'s definition to include *all* burglaries of dwellings.  *Taylor*, 495 U.S. at 593.  Therefore, even if a vehicle outfitted for overnight accommodation is a dwelling, burglary of such a vehicle—according to *Taylor* and its definition drawn from LaFave's treatise—is *not* a generic ACCA burglary, because it is not a burglary of a building or structure.

## II

The discussion above presumed that vehicles could be dwellings.  But it is at least arguable that no matter how well suited for sleeping, vehicles do *not* fit within the traditional meaning of dwelling, at least for the purposes of the law of burglary.  The dissent, quoting Black's Law Dictionary (10th ed. 2014), would hold that "the traditional meaning of 'dwelling'"

includes vehicles so long as they are "used or intended for use as a human habitation." Dissenting Op. at 35.

But Blackstone's Commentaries on the Laws of England—cited by *Taylor*, 495 U.S. at 580 n.3, 593 n.7, as the source of its understanding of common-law burglary—rejects the notion that a tent or a vehicle could be the subject of a burglary:

> "Neither can burglary be committed *in a tent* or booth erected in a market or fair; *though the owner may lodge therein*: for the law regards thus highly nothing but *permanent edifices*; a house or church, the wall, or gate of a town; and it is the folly of the owner to lodge in so fragile a tenement: but *his lodging there no more makes it burglary to break it open, than it would be to uncover a tilted* [i.e., covered] *waggon in the same circumstances.*"

4 William Blackstone, Commentaries *226 (emphases added) (footnotes omitted); *see also id.* at *224–26; Sir Edward Coke, 3 *Institutes of Laws of England*, ch. XIV ("A tent or booth in fair or market is not domus mansionalis [a dwelling house that may be the place of a burglary]," even though "every house for the dwelling and habitation of man is taken to be a mansion-house, wherein burglary may be committed."). And, insofar as we seek to determine the traditional common-law understanding of a dwelling, Blackstone beats Black's.

Moreover, the dissent cites the *most recent* edition of Black's Law Dictionary, published in 2014; in earlier editions, however, Black's Law Dictionary defined a dwelling house—again, for the purposes of the law of burglary—simply as "[a] house in which the occupier and his family usually reside, or, in other words, dwell and lie in." *E.g.*, *Dwelling House*, *Black's Law Dictionary* (rev. 4th ed. 1968).

What the true common-law definition of burglary was—and whether that could include "uncover[ing] a tilted waggon"—is an interesting question, and there are certainly jurisdictions that would adopt the dissent's understanding. But it is not a question for us to decide, for the Supreme Court already consulted these very same sources in deciding *Taylor*, and—at least insofar as the ACCA is concerned—the Supreme Court has made clear that no burglary of a vehicle constitutes generic burglary, not even burglary of a vehicle that serves as a primary residence.

The majority's result here is not, therefore, "contrary" to *Taylor*, as the dissent asserts. Dissenting Op. at 36. Rather, it is *compelled by Taylor*.

**III**

Admittedly, the Court's ACCA jurisprudence (and our adoption of it) produces bizarre results, some of which the dissent cites. There will be cases where a sentencing court, in applying the categorical approach, must, for example, turn a blind eye to a defendant's prior convictions for burgling houses merely because the applicable burglary statute allows for the *possibility* of conviction for burgling an RV, even if, factually, the court knows full well that the defendant standing before it habitually burgled houses. And Congress, surely, would have wanted to include convictions for burgling houses as ACCA predicates. But we are bound by *Taylor*, and the Court has consistently reinforced *Taylor*'s bright-line "building or structure" definition over the past twenty-seven years, as the majority opinion well explains. *See* Majority Op. at 4–5.

Just last year, Justice Alito compared the Court's ACCA jurisprudence to the journey of a Belgian woman who, having set out to pick up a friend at the Brussels train station 38 miles from home, followed her GPS for 900 miles in the wrong direction before realizing—in Zagreb, Croatia—"that she had gone off course," at which point she finally decided to call home. *Mathis*, 136 S. Ct. at 2267 (Alito, J., dissenting). "Along the way from *Taylor* to the present case," Justice Alito wrote, "there have been signs that the Court was off course and opportunities to alter its course. Now the Court has reached the legal equivalent of Ms. Moreau's Zagreb. But the Court, unlike Ms. Moreau, is determined to stay the course and continue on, traveling even further away from the intended destination. Who knows when, if ever, the Court will call home." *Id.* at 2271.

Perhaps the Court will call home soon: it recently vacated and remanded a Fifth Circuit decision for reconsideration where the Fifth Circuit had upheld the use of a conviction under Texas Penal Code § 30.02(a) as a generic ACCA burglary even though the Texas burglary statute incorporates the *very same* definition of "habitation" in Texas Penal Code § 30.01(1) discussed in Part I.A, *supra*. *United States v. Herrold*, 813 F.3d 595 (5th Cir.), *vacated*, 137 S. Ct. 310

(2016). On remand, in a one-page opinion that relies and rests on Fifth Circuit precedent, the Fifth Circuit reaffirmed its holding that Texas burglary of a habitation is an ACCA burglary. *United States v. Herrold*, No. 14-11317, 2017 WL 1326242 (5th Cir. Apr. 11, 2017) (per curiam). In light of these developments, then, it seems worthy of mention that three decisions cited in the dissent as supporting the Government's position—decisions of the Fifth, Ninth, and Tenth Circuits—are ones that uphold the use of the *very same* Texas burglary statute as generic ACCA burglary. *See United States v. Silva*, 957 F.2d 157, 161–62 (5th Cir. 1992); *United States v. Sweeten*, 933 F.2d 765, 770 (9th Cir. 1991) (per curiam); *United States v. Spring*, 80 F.3d 1450, 1461–63 (10th Cir. 1996); Dissenting Op. at 38.

Moreover, the Eighth Circuit seems recently to have adopted the Supreme Court's understanding of generic ACCA burglary in two decisions in which it held that Wisconsin and Arkansas burglary statutes were broader than generic ACCA burglary. *United States v. Sims*, 854 F.3d 1037, 1040 (8th Cir. 2017) ("[J]ust as it was inconsequential that Wisconsin's statute limited burglary to motor homes, it is inconsequential that Arkansas's statute confines residential burglary to vehicles '[i]n which any person lives' or '[t]hat [are] customarily used for overnight accommodation.' Ark. Code Ann. § 5-39-101(4)(A); *see also United States v. Forrest*, 611 F.3d 908, 913 (8th Cir. 2010) (finding a Colorado burglary statute was categorically broader than generic burglary *because* it covered vehicles adapted for overnight accommodations)." (alterations in original) (emphasis added)); *United States v. Lamb*, 847 F.3d 928, 931 (8th Cir. 2017) (upholding use of Wisconsin burglary conviction as ACCA predicate where the Wisconsin statute was divisible, listing several separate crimes, some of which encompassed "a broader range of conduct than generic burglary as defined in *Taylor*," but where the defendant had been convicted under a subsection that was not broader than generic burglary).

Given the similarity between the Texas statute at issue in *Herrold*, *Sweeten*, and *Spring*, and the Tennessee statute at issue here, perhaps the Court will soon clarify the question before us—a question that occupies a significant portion of the federal judiciary's docket. But, until then, it is not incumbent upon us to rewrite the ACCA to include all burglaries of dwellings within its definition of burglary, even if that is what Congress would have wanted.

IV

The dissent proposes an "easy way" and a "more complicated way" to resolve this case. What both ways have in common is that they presume, contrary to *Taylor,* that generic ACCA burglary must be a category of burglaries that "extends *beyond*" (so as to *include*) or "encompass[es]" common-law burglary.  Dissenting Op. at 33, 34 (first quoting from the easy way, then quoting from the more complicated way).

A simple diagram illustrates the dissent's understanding:



This understanding has a certain appeal and is, admittedly, quite easy to follow—any burglary of a dwelling, whether of a vehicle or otherwise, counts as a generic ACCA burglary, so if a burgled vehicle is a dwelling, then the burglary was a generic ACCA burglary.  But elegance is no substitute for accuracy.

Instead, the following diagram more correctly illustrates the Supreme Court's ACCA jurisprudence:



**BURGLARY**

**Generic ACCA Burglary (of a building or structure)**

**Common Law Burglary (of a dwelling)**

**Burglary of a Vehicle** (*never* a building or structure, even if it may be a dwelling)

As this diagram indicates, the Supreme Court's test for whether a burglary is a generic ACCA burglary is whether the burgled place is a building or structure, not whether it is a dwelling, although certainly there will be significant overlap between the set of common-law burglaries and the set of generic ACCA burglaries. Having removed the presumption that *every* common-law burglary of a dwelling must be an ACCA burglary, then, it is easier to see that, even if vehicles can be dwellings (which, at common law, they arguably are not—see Part II, *supra*), they are still not buildings or structures, and so their burglary cannot be a generic ACCA burglary.

Perhaps one reason why this is so complicated is that states have defined building or structure to include things that *plainly* are not buildings or structures.  *E.g.*, Ariz. Rev. Stat. § 13-1501 (defining "structure," for purpose of Arizona Criminal Trespass and Burglary laws, as "any device that accepts electronic or physical currency and that is used to conduct commercial transactions [e.g., an ATM], any vending machine [e.g., a gumball or other candy machine] or any building, object, vehicle, railroad car or *place with sides and a floor . . .* used for lodging, business, transportation [e.g., a red Radio Flyer wagon], recreation [e.g., a jai alai court] or storage [e.g., a rolling garbage bin]" (emphasis added)); Haw. Rev. Stat. § 708-800 (providing no definition for "structure," but defining "building" as "any structure, and the term also includes any vehicle, railway car, aircraft, or watercraft used for lodging of persons therein").  In Arizona, then, "structures" would include such devices as credit-card payment terminals and such places as a swimming pool or a horse's trough.  And in Hawaii, a state that is no stranger to red-eye flights, an aircraft—perhaps depending on how well its first-class cabin is suited for overnight accommodation—may evidently be a flying "building," for purposes of the criminal burglary laws.

But even if state legislatures, in classifying various places or objects as buildings or structures, have not always meant what they have said, presumably the Supreme Court *has*—and presumably the Supreme Court also meant what it said *about meaning what it says*.  I therefore concur in the majority's opinion, even if, as the dissent charges, I thereby risk "mak[ing] the mistake of reading [a Supreme Court opinion] like a statute."  Dissenting Op. at 36.

---

**CONCURRENCE**

---

HELENE N. WHITE, Circuit Judge, concurring. I concur in the majority's and Judge Boggs's opinions. I write separately to respond to the dissent's assertions regarding the common law.

As the majority observes, Congress originally defined burglary in the ACCA as "any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense." *Taylor v. United States*, 495 U.S. 575, 581(1984) (quoting 18 U.S.C. § 1202(c)(9)). There is no question that if Congress had retained this original definition, which applied only to buildings, the challenged Tennessee statutory language—including both vehicles and tents—would not qualify as generic. Faced with the unexplained omission of the statutory definition, the *Taylor* Court opted to define generic burglary as involving a "building or structure," rather than just a building, but rejected definitions of burglary that include "places, such as automobiles . . . other than buildings." *Id.* at 599. The dissent concludes that in doing so, the Court did not intend to exclude dwellings that are not buildings or structures. We know this, according to the dissent, because "*Taylor* told us that common-law burglary *always* qualified as a violent felony under the Act." And, because "the 'habitations' covered by the Tennessee aggravated burglary statute qualify as dwellings under the common-law definition of burglary," Tennessee aggravated burglary is generic burglary covered by the ACCA.

But the dissent's basic premise—that tents and vehicles were covered by the common law—is incorrect.[1] *Black's Law Dictionary* is not the standard for defining the common law. Neither are state-court decisions interpreting the term "dwelling." Rather, Blackstone and similar treatises are the standard references for the common law. *See Taylor*, 490 U.S. at 593

---

[1]The dissent at times refers to the "traditional meaning" of dwelling, rather than the common-law meaning. Because the *Taylor* Court referred to "the traditional common-law definition," 495 U.S. at 580, and the dissent does not otherwise discuss the common-law definition of "dwelling," I assume no distinction is intended.

n.7; *see also McDonald v. City of Chicago*, 561 U.S. 742, 768 (2010); *District of Columbia v. Heller*, 554 U.S. 570, 594–95 (2008).

> According to Blackstone, only permanent structures can be the subject of burglary:
>
> Neither can burglary be committed in a tent or booth erected in a market or fair; *though the owner may lodge therein*: for the law regards thus highly nothing but permanent edifices; a house, or church, the wall or gate of a town and though it may be the choice of the owner to lodge in so fragile a tenement, yet his lodging there no more makes it burglary to break it open, than it would be to uncover a tilted wagon in the same circumstances.

4 William Blackstone & St. George Tucker, Blackstone's Commentaries 225 (1803) (emphasis added). Similarly, William Hawkins's Treatise of Pleas of the Crown states:

> From what has been said it clearly appears, That no Burglary can be committed by breaking into any Ground inclosed, or Booth, or Tent, &c. for there seems to be no Colour from any Authority ancient or modern, to make Offence Burglary that is not done either against some House, or Church, or the Walls, or Gates of some Town.

104 (3d ed. 1739). Further, in his leading 19th-century American treatise, Wharton defined dwelling-house as "any permanent building in which a party may dwell and lie, and as such, burglary may be committed in it," and agreed that burglary "cannot be committed in a tent or booth in a market or fair, *even although the owner lodge in it*; because it is not a permanent but a temporary edifice." 2 Francis Wharton, A Treatise on the Criminal Law of the United States 369 §§ 1568, 1570 (6th ed. 1868) (emphasis added).

The evolution of Tennessee's burglary statute confirms that common-law burglary did not include tents or vehicles. Tennessee's earliest burglary statute defined burglary as "the breaking and entering into a mansion house by night with intent to commit a felony." 1829 Tenn. Pub. Acts 30. This mirrored the common-law definition of burglary, which did not include movable structures. *See* 1 Sir Edward Coke, The Third Part of the Institutes of the Laws of England 63 (15th ed. 1797) ("A burglar . . . is by the common law a felon, that in the night breaketh and entreth into a mansion house of another" with intent to commit a felony). It was not until 1885 that Tennessee's burglary statute was expanded and began to resemble its modern-day statute. In 1885, Tennessee expanded its burglary definition to include railroad cars:

"[w]hoever shall break and enter into any freight or passenger car, either in the daytime or night time, within this State, with intent to steal therefrom anything of value, or to commit a felony of any kind . . . shall be guilty of burglary[.]" 1885 Tenn. Pub. Acts 66–67. This and all future expansions of the statute were clear departures from common-law burglary, as freight and passenger cars were not encompassed by the common-law definition of "breaking and entering into a mansion house."

The dissent argues that references to scholars such as Blackstone are obsolete because the common-law has evolved over time, and by 1984—the year the ACCA was enacted—most states considered vehicles and tents to be dwellings. First, the *Taylor* Court rejected the dissent's method of analysis, explaining that "[t]he word 'burglary' has not been given a single accepted meaning by the state courts" and that Congress did not intend to define predicate offenses based on "technical definitions and labels under state law." 495 U.S. at 580, 590. Second, for its state-common-law proposition, the dissent cites *Kanaras v. State*, 460 A.2d 61, 70–71 (Md. Ct. Spec. App. 1983). Even under *Kanaras*, however, Tennessee's aggravated-burglary statute would be broader than common-law burglary. In *Kanaras*, Maryland's Court of Special Appeals determined that a vehicle constituted a "dwelling-house" only if it was a "regular place of abode." *Id.* at 69. It explained that "[g]enerally, a vehicle-type structure, used as a vehicle primarily for transportation purposes, should not be regarded as a dwelling house, even if occasionally used for sleeping." *Id.* Tennessee's aggravated-burglary statute draws no such distinction. Rather, its definition of "habitation" includes a "vehicle that is designed or adapted for the overnight accommodation of persons," and it also includes all tents without qualification. Tenn. Code Ann. § 39-14-401(1)(A), (B). Thus, under Tennessee law, a tent or a vehicle adapted for overnight use can be burglarized, even if never actually used as a "regular place of abode." *Kanaras* shows at most that it was *possible* under state common law that a tent or vehicle would constitute a dwelling.

Further, state common law did not *categorically* consider tents and vehicles, even when designed for the overnight accommodation of persons, to be dwellings. The dissent cites *Kanaras* as "collecting cases" supporting the proposition that state courts "classify burglaries of motor homes and camping tents as burglaries of dwellings." Dissenting Op. at 35. *Kanaras*

does no such thing. In all, *Kanaras* string cites sixteen cases for the idea that "a vehicle such as the Shasta [Winnebago]" could "be considered as a dwelling house." 460 A.2d at 69. Of these sixteen cases, eight of them do not involve burglary. *See, e.g., Copley v. Rona Enterprises, Inc.*, 423 F. Supp. 979 (S.D. Ohio 1976) (a federal court interpreting "dwelling" under the Truth in Lending Act). Three others considered burglary of mobile homes that were neither self-propelled vehicles nor tents. *See, e.g., State v. Ryun*, 549 S.W.2d 141, 142 (Mo. 1977) ("It is a typical mobile home, detached from the tow vehicle by which it may be moved. It has a 'skirt' from the floor level to the ground to block air passage under the floor, and is connected to an electricity transmission line."). Two others involved the interpretation of burglary statutes that omitted "dwelling" from their definitions of burglary, and the courts instead considered whether a tent or a "movable sheep wagon" constituted a "building" or a "house." *See, e.g., State v. Ebel*, 15 P.2d 233, 234 (Mt. 1932) ("Common-law 'burglary' is defined as the breaking and entering of the dwelling of another . . . but the controlling definition here is: 'Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse, or other building, tent, vessel, railroad car . . . Here we have 'a structure which has walls on all sides and is covered by a roof'—a house, a building."). Thus, only three of the sixteen cases support the dissent's proposition, and these include two cases from the same Texas court, *see Luce v. Slate*, 81 S.W.2d 93 (Tex. Crim. App. 1935); *Martin v. State*, 57 S.W.2d 1104 (Tex. Crim. App. 1933), and one case, *United States v. Lavender*, 602 F.3d 639 (4th Cir. 1979), from a federal court of appeals that has since "adopted a 'no-vehicles-or-tents' definition." Dissenting Op. at 38; *United States v. White*, 836 F.3d 437, 445–46 (4th Cir. 2016).

Rather than a change in state *common* law, the inclusion of tents and vehicles in state burglary law reflects the expansion of state *statutory* law. Indeed, *Ebel* explains as much, concluding that a movable sheep wagon was a "house" and a "building" under Montana's burglary statute because the statute, unlike the common law, required only that a structure have "walls on all sides and [was] covered by a roof" to be capable of being burgled. 15 P.2d at 234. Similarly, the California Supreme Court explained that California's definition of burglary expanded to include tents and other movable structures because of a change in state statutory law, not state common law:

> The first definition of the [burglary] offense found in our statute abolishes all the nice distinctions of the common law by the use of this language: 'Any dwelling house, or any other house whatever, *or tent, or vessel or other water craft*'—language broad enough to include buildings of any kind and used for any purpose. . . . [T]he absence of more particular terms of description indicates an intention, on the part of the Legislature, to include every kind of building or structures 'housed in' or roofed, regardless of the fact whether they are at the time, or ever have been, inhabited by members of the human family.

*People v. Stickman*, 34 Cal. 242, 245 (Cal. 1867) (emphasis added). Thus, the dissent's view of the common law is unsupported no matter when one considers the proper reference point to the common law to be.

Additionally, the dissent's assertion that Michigan's home-invasion statute and Kentucky's second-degree burglary statute apply to common-law dwellings is unsupported. The Michigan home-invasion statute defines dwelling as "a structure or shelter that is used permanently or temporarily as a place of abode, including an appurtenant structure attached to that structure or shelter." Mich. Comp. Laws. § 750.110a(1)(a). That this definition is broader than the common law becomes clear when one looks at Michigan's 1837 burglary statute, which adopted the common-law definition and criminalized "break[ing] and enter[ing] any dwelling-house in the night time" with the intent to commit a felony. 1837 Mich. Pub. Acts 627. In applying this definition of burglary, Michigan's Supreme Court explained that "[t]he statutory definition of burglary in a dwelling-house, is the same as that of the common law," and looked to Blackstone's Commentaries for the definition of a dwelling-house. *Pitcher v. People*, 16 Mich. 142, 146 (1867). It is true that, as the dissent observes, we have held that Michigan's home-invasion statute, which proscribes breaking and entering a dwelling with the intent to commit a crime, constitutes generic burglary. *United States v. Quarles*, 850 F.3d 836, 840 (6th Cir. 2017). However, in doing so, we explained that "it would be a stretch, rather than a realistic probability, that a tree, vehicle, boat, outcropping of rock, cave, bus stop, or suspended tarp would be considered a 'home.'" *Id.* at 839. We concluded that the home-invasion statute constitutes generic burglary because it covers no more than buildings and structures, not because its definition comported with common law.

Kentucky's second-degree burglary statute similarly does not apply to common-law dwellings.  This statute defines burglary in the second degree as "with the intent to commit a crime, [a person] knowingly enters or remains unlawfully in a dwelling."  Ky. Rev. Stat. § 511.030.  However, the cases finding the Kentucky second-degree burglary statute to be generic made the same mistake we made in *Nance*—these unpublished opinions failed to look to the statutory definition of "dwelling."  *See United States v. Moody*, 634 F. App'x 531, 534 (6th Cir. 2015); *United States v. Jenkins*, 528 F. App'x 483, 485 (6th Cir. 2013).  Although Kentucky defines "dwelling" as "a building which is usually occupied by a person lodging therein," Ky. Rev. Stat. § 511.010(2), the statute further provides that "'[b]uilding, in addition to its ordinary meaning, means any structure, vehicle, watercraft or aircraft:  (a) Where any person lives; or (b) Where people assemble for purposes of business, government, education, religion, entertainment or public transportation."  Ky. Rev. Stat. § 511.010(1).  Thus, Kentucky's definition of a "dwelling" includes vehicles, watercraft, and aircraft, and is thus broader than the common-law meaning of dwelling.

It is clear that the common law, regardless of continent or century, did not consider a tent as a dwelling that could be the subject of burglary.  And, although no account of the common law discusses mobile homes and self-propelled vehicles for obvious reasons, it is apparent that the common law would not have regarded such places of habitation as permanent edifices worthy of protection as a dwelling.  Thus, I reject two basic premises of the dissent's reasoning—that the habitations covered by the Tennessee statute qualify as dwellings under the common-law definition of burglary, and that because *Taylor* includes common-law burglary as a subset of generic burglary, all dwellings are covered by generic burglary.

The dissent leaps from the *Taylor* Court's inclusion of all common-law burglary in generic burglary to the conclusion that common-law burglary covers all dwellings and habitations.  "The greater includes the lesser.  No matter how far the federal definition of 'burglary' extends *beyond* the common law definition—by eliminating, say, the requirement that the burglary occur at night or by expanding the kinds of structures involved to cover an office building or a shed—it still covers the Tennessee law, which focuses on burglaries of dwellings or habitations.  Burglary of a dwelling in its many forms, including each of the forms identified in

the Tennessee law, is always a federal burglary." Dissenting Op. at 33. "By noting that modern burglary covers structures *other than dwellings*, the Court made clear that the phrase 'building or structure' in its definition of burglary includes all dwellings. 'Structure' is the broader category; 'dwelling' is a subset." Dissenting Op. at 34. But the *Taylor* Court said no such thing. The *Taylor* Court never addressed the definition of dwelling, and never stated that either common-law or generic burglary includes all dwellings. Thus, the dissent's assertion that "*Taylor* told us that common law burglary always qualified as a violent felony under the Act" is correct, but its import is simply that breaking and entering a dwelling house during the night with intent to commit larceny is generic burglary.

I do not disagree that the outcome of today's decision leads to some puzzling results. But, as the dissent impliedly recognizes, the unsatisfactory outcomes in this area are the product of the combined effect of the requirements that we must (1) look to the elements of the offense, not the facts of the particular case, and (2) we may not look beyond the elements if a statute is indivisible. If the results are unsatisfying, we must accept them until Congress changes the ACCA or the Supreme Court its interpretation of it. Further, the dissent's approach leads to its own puzzling outcomes. A defendant who reached into someone else's unoccupied tent while camping and grabbed a granola bar would be subject to an ACCA enhancement; but a defendant who disassembled a tent and stole it and all its contents without entering it would not. And a defendant could steal a tent while it is collapsed and therefore not capable of being entered, bring it home, pitch it, enter it with the intent to use a computer to steal funds from a bank account, and be subject to the ACCA enhancement. A defendant who opened the door of a seemingly unoccupied vehicle hoping to find spare change, and then fled when confronted by the owner who used the car as his home, would be subject to the ACCA; but a defendant who knew the car contained all the owner's possessions, waited for the owner to leave the car, then stripped it and stole all its contents would not be.

Whether Tennessee's aggravated-burglary offense and similarly-defined offenses fall within Congress's concept of generic burglary is a more difficult question. Persuasive arguments can and have been made on both sides. For me, the Model Penal Code's expansive definition of "occupied structure" provides the strongest support for the dissent. However, the majority's and

Judge Boggs's thorough discussions of *Taylor* and the Supreme Court's consistent rejection of vehicles as a subject of generic burglary and emphasis on "buildings and other structures," leads me to agree that generic burglary does not include such temporary structures as tents and vehicles, even when used as a habitation.

---

**DISSENT**

---

SUTTON, Circuit Judge, dissenting. There is an easy way to think about this case. And there is a more complicated way. Either way, Stitt's conviction under Tennessee law for aggravated burglary counts as a "burglary" under the Armed Career Criminal Act.

*The easy way.* The Armed Career Criminal Act establishes a mandatory minimum sentence for firearm offenders who have three previous convictions for "violent felon[ies] or [] serious drug offense[s]." 18 U.S.C. § 924(e)(1). The Act lists "burglary" as a qualifying violent felony. *Id.* § 924(e)(2)(B)(ii). The relevant portion of Tennessee's aggravated burglary statute applies to burglary of a "habitation," defined as "any structure, including buildings, module units, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodation of persons," including "a self-propelled vehicle that is designed or adapted for the overnight accommodation of persons and is actually occupied at the time of initial entry by the defendant." Tenn. Code § 39-14-401(1)(A), (B).

Aggravated burglary under Tennessee law counts as a crime of violence for three reasons.

One: Congress meant to use "burglary" in a way that goes beyond the common law definition of burglary: "breaking and entering of a dwelling at night, with intent to commit a felony." *See Taylor v. United States*, 495 U.S. 575, 592–94 (1990).

Two: The "habitations" covered by the Tennessee aggravated burglary statute qualify as dwellings under the common law definition of burglary.

Three: The greater includes the lesser. No matter how far the federal definition of "burglary" extends *beyond* the common law definition—by eliminating, say, the requirement that the burglary occur at night or by expanding the kinds of structures involved to cover an office building or a shed—it still covers the Tennessee law, which focuses on burglaries of dwellings or habitations. Burglary of a dwelling in its many forms, including each of the forms identified in the Tennessee law, is always a federal burglary. That's all anyone needs to know.

*The more complicated way.* The same conclusion applies even if we account for a few more perspectives and concepts: the categorical versus modified categorical approaches, divisible versus indivisible statutes, and generic versus non-generic definitions of crimes. *Taylor* sought to provide a uniform definition of "burglary" for federal courts to measure state criminal statutes. *Id.* at 599. In doing so, it declined to limit its definition of burglary to "the traditional common-law definition"—"breaking and entering of *a dwelling* at night, with intent to commit a felony"—and opted instead for a "*broader* 'generic' definition" drawn from the Model Penal Code: "unlawful or unprivileged entry into, or remaining in, *a building or structure*, with intent to commit a crime." *Id.* at 580, 592, 599 (emphases added).

The Court explained that the modern definition encompassed the common law crime: "Whatever else the Members of Congress might have been thinking of, they presumably had in mind at least the 'classic' common-law definition when they considered the inclusion of burglary as a predicate offense." *Id.* at 593. The Court repeatedly described the common law definition as "narrow," *id.* at 595, 596, and said that it constituted a "subclass" of modern burglary, *id.* at 598. The problem with sticking to the common law definition was that most States had "expanded" on the definition, including "entry without a 'breaking,' structures other than dwellings, offenses committed in the daytime" and other new, more expansive elements. *Id.* at 593. By noting that modern burglary covers structures *other than dwellings*, the Court made clear that the phrase "building or structure" in its definition of burglary includes all dwellings. "Structure" is the broader category; "dwelling" is a subset. The Court even said that when "a statute is narrower than the generic view, *e.g.*, in cases of burglary convictions in common-law States . . . there is no problem." *Id.* at 599.

That's this case, which is why there is no problem here either. The Tennessee law, to repeat, defines "habitation" as "any structure, including buildings, module units, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodation of persons," including "a self-propelled vehicle that is designed or adapted for the overnight accommodation of persons and is actually occupied at the time of initial entry by the defendant." Tenn. Code § 39-14-401(1)(A), (B). This definition of aggravated burglary readily qualifies as burglary of a dwelling and thus as "burglary" under federal law for several reasons.

The Tennessee definition mirrors the definition of "occupied structure" in the Model Penal Code's burglary statute, on which *Taylor* based its understanding of the elements of generic burglary. *See Taylor*, 495 U.S. at 580, 598 n.8; American Law Institute, Model Penal Code § 221.0(1).

The Tennessee definition matches the traditional meaning of "dwelling." *Black's Law Dictionary* defines "dwelling house," in the criminal context, as "[a] building, a part of a building, a tent, a mobile home, or another enclosed space that is used or intended for use as a human habitation." *Id.* at 619 (10th ed. 2014). State courts agree. They classify burglaries of motor homes and camping tents as burglaries of dwellings. *See, e.g.*, *People v. Trevino*, 1 Cal. App. 5th 120, 125 (2016) (holding that a recreational vehicle was an "inhabited dwelling house"); *People v. Wilson*, 11 Cal. App. 4th 1483, 1489 (1992) (holding that a camping tent was an "inhabited dwelling house"); *Kanaras v. State*, 460 A.2d 61, 70–71 (Md. Ct. Spec. App. 1983) (collecting cases). To my knowledge, there is no contrary state authority.

The federal courts have unanimously held that burglary of a *dwelling* covers vehicles and tents *that are designed for human habitation*. Until August 1, 2016, the Sentencing Guidelines included "burglary of a dwelling" as an enumerated offense in the definition of "crime of violence." U.S.S.G. § 4B1.2 (2015). Consistent with *Taylor*'s conclusion that burglary of a dwelling is a subset of generic burglary of a building or structure, the Commission's original commentary noted that "[c]onviction for burglary of a dwelling would be covered; conviction for burglary of *other structures* would not be covered." U.S.S.G. § 4B1.2 cmt. n.1 (1987) (emphasis added). All courts of appeals that interpreted this provision on its own terms held that statutes that criminalized burglary of tents and vehicles (such as RVs) adapted for overnight accommodation qualified as burglary of a dwelling. *See, e.g.*, *United States v. Ramirez*, 708 F.3d 295, 303 (1st Cir. 2013) (any "enclosed space for use or intended use for human habitation" is a dwelling); *United States v. Murillo-Lopez*, 444 F.3d 337, 342, 345 (5th Cir. 2006); ("dwelling" encompasses "tents and vessels used for human habitation"); *United States v. Graham*, 982 F.2d 315, 316 (8th Cir. 1992) (per curiam) (using definition from *Black's*); *United States v. Rivera-Oros*, 590 F.3d 1123, 1132–33 (10th Cir. 2009) (same); *United States v. Garcia-Martinez*,

845 F.3d 1126, 1132 (11th Cir. 2017) (vehicles "used or intended for use for human habitation" are dwellings).

All in all, *Taylor* tells us that burglary of a dwelling is always generic, and a uniform body of precedent tells us that Tennessee's definition of "habitation" applies only to dwellings. The outcome should be clear. The statute is generic. Stitt's conviction qualifies as a violent felony.

In reaching a contrary conclusion, the court points to several statements in Supreme Court opinions and, with respect, makes the mistake of reading an opinion (in truth part of an opinion) like a statute. *Taylor* observed that some state burglary statutes go beyond the generic definition by "eliminating the requirement that the entry be unlawful, or by including places, such as automobiles and vending machines, other than buildings." 495 U.S. at 599. The Court gave one example of such a statute: a Missouri law that criminalized breaking and entering into "any booth or tent, or any boat or vessel, or railroad car." *Id.* at 593. The Court repeated that burglary is a violent felony under the Act "only if committed in a building or enclosed space . . . not in a boat or motor vehicle." *Shepard v. United States*, 544 U.S. 13, 15–16 (2005). And it said the same thing in *Mathis v. United States*, 136 S. Ct. 2243, 2250 (2016).

But these statements do not undermine *Taylor*'s conclusion that dwellings categorically remain structures and thus that burglary of a dwelling remains categorically generic. Just look at the context of each statement. The Missouri statute discussed in *Taylor* applied to *any* tent or boat, including a canoe or a tent for an outdoor party, not just those tents or boats used for habitation. So too of the law in *Shepard*, which applied to any "building, ship, vessel, or vehicle." 544 U.S. at 31. And of the law in *Mathis*, which applied to any "land, water, or air vehicle." 136 S. Ct. at 2250. These statutes covered *all* vehicles, and so were clearly not generic under *Taylor* because they did not apply to dwellings—namely places used for habitation. The Court had no reason to consider recreational vehicles and houseboats when deciding *Taylor* or any case since, and thus no reason to consider that some vehicles (but not all vehicles) count as dwellings under the common law definition.

The court's decision not only goes beyond what *Taylor/Shepard/Mathis* require. It also contradicts *Taylor*'s reasoning. The court's decision stands for the proposition that simple common-law burglary—"breaking and entering into a dwelling, with intent to commit a felony"—is not generic when it comes to state courts that follow the long-held custom of treating vehicles and tents adapted for overnight accommodation as dwellings. How can that be? *Taylor* told us that common law burglary *always* qualified as a violent felony under the Act. 495 U.S. at 599. If the court is correct, generic burglary now goes beyond the common law crime but never includes it.

In this circuit alone, the majority's holding jeopardizes two statutes previously treated as generic. Consider Michigan's home invasion statute, which applies to a common law "dwelling," Mich. Comp. Laws § 750.110a, and Kentucky's second-degree burglary statute, which does the same, Ky. Rev. Stat. § 511.030. We previously treated convictions under the former as a violent felony, *United States v. Quarles*, 850 F.3d 836, 839–40 (6th Cir. 2017), and did the same for the latter, *United States v. Moody*, 634 F. App'x 531, 534–35 (6th Cir. 2015).

The majority's holding also produces this head-scratching outcome—that Tennessee's lesser crime of "burglary of a building" qualifies as generic burglary while aggravated burglary does not. A similar oddity arises within the aggravated burglary statute itself under the court's decision. It's okay if the statute covers burglary of unoccupied structures, such as tool sheds, *see United States v. Lara*, 590 F. App'x 574, 579 (6th Cir. 2014), but not if it covers places where people regularly lodge. How likely is that? That Congress meant to classify burglaries of unoccupied structures as violent felonies but not the burglary of a sleeping family's RV?

The court responds that we should concentrate on "a place's form and nature—not its intended use or purpose—when determining whether a burglary statute's locational element is a 'building or other structure.'" Maj. Op. 4. But form follows function, making it impossible for *any* definition of burglary to avoid functional considerations. Bridges, cranes, gazebos, and doll houses are all "structures," but the court would not claim that stealing from any of these locations would qualify as burglary. A would-be burglar cannot "break and enter" into those structures because, as a matter of function, they're not designed to house people and property securely. If anything, determining what structures a person can break into and enter seems to be

a more difficult functional question than determining what structures are designed for human accommodation.

But all of this distracts from the key point:  We should not isolate three words from *Taylor*, lift them from their context, and in the process eliminate common law burglary of a dwelling, which *Taylor* tells us in no uncertain terms is the heart of the crime.

The court claims that five courts of appeals have followed its approach and just one has gone the other way.  That is not quite right.  To my knowledge, only six courts of appeals have considered statutes that, like Tennessee's, apply only to vehicles and tents that serve as dwellings.  In addition to our decision in *United States v. Nance*, 481 F.3d 882, 887 (6th Cir. 2007), two other courts of appeals have adopted the dwelling definition, holding that burglary statutes covering vehicles and tents designed for overnight accommodation are generic under *Taylor*.  *United States v. Silva*, 957 F.2d 157, 162 (5th Cir. 1992); *United States v. Spring*, 80 F.3d 1450, 1461–63 (10th Cir. 1996).  Three other courts, it is true, have adopted a "no-vehicles-or-tents" definition.  *See United States v. Henriquez*, 757 F.3d 144, 149 (4th Cir. 2014); *United States v. Sims*, 854 F.3d 1037, 1039 (8th Cir. 2017); *United States v. Cisneros*, 826 F.3d 1190, 1193–94 (9th Cir. 2016).  But all three decisions come with qualifications.  One comes with internal disagreement within the case itself.  *Henriquez*, 757 F.3d at 151–55 (Motz, J., dissenting) (concluding that burglary of a common law dwelling is always generic).  The other two are at odds with decisions from the *same* court, including one decision that involves this *same* Tennessee statute, *see United States v. Pledge*, 821 F.3d 1035, 1037 (8th Cir. 2016) (holding that Tennessee aggravated burglary is generic); *United States v. Sweeten*, 933 F.2d 765, 771 (9th Cir. 1991) (per curiam) (holding that Texas's identical statute was generic).

The stakes of this debate have grown since *Mathis*.  Before *Mathis*, many courts made liberal use of the "modified categorical approach," which enabled courts to look at certain records from a prior conviction under a non-generic statute to determine whether the defendant, to use one example, in fact burglarized a home or a vehicle.  *See* 136 S. Ct. at 2249.  This meant that declaring a statute non-generic carried few consequences; a court often could proceed to figure out what the defendant in fact did.  But *Mathis* made clear that the modified categorical approach applies only when a statute contains multiple alternative elements and therefore defines

separate, divisible crimes. *Id.* at 2249–50. A statute that merely lists different means of commission—such as burglarizing a building, vehicle, or tent—is not divisible. Now, when a court declares a statute like Tennessee's non-generic, that's all there is to it. Because aggravated burglary in Tennessee can apply to the burglary of a motor home, no one convicted under the statute has committed "burglary" for purposes of the Armed Career Criminal Act.

Nor is Tennessee an outlier. The majority's no-vehicles-or-tents rule implies that *every state's basic burglary statute is non-generic. See* Appellee's Supp. Br., App'x B. It's a strange genus that doesn't include any species. In combination with *Mathis*, the majority's definition of generic burglary effectively reads "burglary" out of the Act. That should give us all pause.

My concurring colleagues contest one of my premises. They claim that tents (and perhaps vehicles) could never be dwellings under the common law, meaning that Tennessee aggravated burglary is not generic even under my reading of *Taylor*. I disagree. The cited authorities from the ancient common law, Blackstone among others, go out of their way to point out that tents erected in public markets are not dwellings. They do not consider whether tents designed for human accommodation might qualify—the only claim I make here and the only reason a tent could be a dwelling under the common law.

But this argument has a broader problem: a mistaken vantage point. Blackstone and other treatise writers may be good guides to the state of the common law in their own centuries. But the very nature of the common law is that it's *never* static. That is its reason for being: It allows courts to make new law to address new circumstances. And that's why some judges complain when courts use a common-law method of interpretation in construing the Constitution or statutes. *See generally* Antonin Scalia, *Common-Law Courts in a Civil-Law System: The Role of United States Federal Courts in Interpreting the Constitution and its Laws, in* A Matter of Interpretation (1997). For our purposes, the proper vantage point is the meaning of the (ever-evolving) common law in 1984, when Congress enacted the Armed Career Criminal Act. By then, the consensus of the state courts—the true authorities on American common law—was that tents and vehicles designed and used for human accommodation count as dwellings. *See Kanaras*, 460 A.2d at 70–71 (collecting cases); *Martin v. State*, 57 S.W.2d 1104, 1104 (Tex. Crim. App. 1933) ("That a tent may be a house within the meaning of the law is not open

to serious question."); *Knowles v. State*, 98 So. 207, 208 (Ala. Ct. App. 1923) (acknowledging that a tent, depending upon its construction and use, may be a "dwelling house"). *Black's Law Dictionary* accounted for this consensus by altering its definition of "dwelling" to include tents and vehicles in 1979. *See id.* at 454 (5th ed.). The Model Penal Code of 1980 also reflected this widely shared understanding. And so did the pertinent state statutes. Let them live in "mansion houses" may have been an answer to those who wanted the protection of the burglary laws for lesser dwellings a long time ago. But that has not been true for many decades.

All of this leads to one conclusion. In 1984, when Congress used the word "burglary" in ACCA, and in 1990, when *Taylor* construed the term to include the common law definition— "breaking and entering of a dwelling at night"—there was no question that tents and vehicles designed and used for human accommodation qualified as dwellings.

To their credit, my concurring colleagues recognize the strange results that follow from their adherence to the "bright-line" rule that burglary of anything besides a "building or structure" can never be generic. *See* Concurring Op. (Boggs, J.) at 20. As noted, that definition nearly renders generic burglary a null set. My colleagues assign the blame for this state of affairs to the *Taylor* Court. But we should give the Court and Congress more credit. The result the court reaches today only follows from *Taylor* if one reads "building or structure" as if it "were a statutory term." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2446 (2013). We should instead adopt "the interpretation that best fits within the highly structured framework that [*Taylor*] adopted." *Id.*

That framework tells us burglary of a dwelling is always generic, regardless of whether the dwelling is made of "stone, steel, or cloth." *People v. Netzik*, 383 N.E.2d 640, 642–43 (Ill. App. Ct. 1978). Whether a suburban home, an apartment, an RV, or a tent under a highway, all of these structures are designed for habitation. And all burglaries of them are covered. Holding otherwise hollows out generic burglary by removing the crime's common law core. I would stand by our decisions in *Nance* and *United States v. Priddy*, 808 F.3d 676, 684 (6th Cir. 2015), which avoided each of these pitfalls and correctly resolved this issue.

For these reasons, I respectfully dissent.